UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GAIL A. WEBSTER,

        Plaintiff,   :

v.                                        Case No. 2:22-cv-3708
                                           Chief Judge Sarah D. Morrison
                                           Magistrate Elizabeth A. Preston
RTK ENTERPRISES OF              Deavers
COLUMBUS, LLC             :

        Defendant.

## OPINION AND ORDER

This matter is before the Court on cross Motions for Summary Judgment. Having been fully briefed, this matter is now ripe for consideration. Defendant requested oral argument, but the Court finds that oral argument is not necessary.

For the reasons below, RTK's Motion for Summary Judgment is **GRANTED**. Ms. Webster's Motion is **DENIED**.

I.     STATEMENT OF FACTS

Gail Webster contacted RTK Enterprises d/b/a Navis Pack and Ship to ship eleven items, including a painting called *Chrysanthemums*, from her late mother's house in Chagrin Falls, Ohio, to her home in Naples, Florida. (ECF No. 22, PAGEID ## 384–86.) In late February 2022, RTK collected the items from the Ohio home. (Def.'s Mot., ECF No. 37, PAGEID # 475.)

In early March 2022, the parties entered into a Universal Shipping Agreement and Release ("USAR") which listed each of the items Ms. Webster intended to ship, their declared value, and their weight. (USAR, ECF No. 22,

PAGEID ## 384–86.) Ms. Webster declared *Chrysanthemums*—which was painted by Ms. Webster's late relative and famous artist, William Sommer—to be worth $25,000. (*Id.* PAGEID # 384.)

Before signing the USAR, Ms. Webster requested and paid for "White Glove Delivery" of her goods. (Webster Aff., ¶ 2.) RTK's website describes White Glove Delivery as providing "placement of items into a room of choice" and "removal of all packing materials, including heavy crates or pallets." (Pl.'s Mot., ECF No. 40-3, PAGEID # 691.)

William Shannon (an owner and operator of RTK) packaged the items at RTK's warehouse. (Shannon, Decl., ¶¶ 11–14.) Mr. Shannon says that he encased *Chrysanthemums* in a wood frame, packed the other art in a separate box, and placed both on a wooden pallet, along with a pre-packed box containing a stand mixer and a mink scarf. (*Id.*) He then wrapped the pallet in opaque black plastic and banded it together with metal bands. (*Id.*) According to RTK, this packaging made it easy to recognize if someone had disturbed the items on the pallet. (*Id.* ¶ 15.)

RTK retained a third-party carrier to ship the goods from Ohio to Florida. (Def.'s Mot., ECF No. 37, PAGEID # 478.) The goods were delivered to Ms. Webster's residence on March 31, 2022. (Shannon Aff., ¶ 22.) At the time of delivery, Ms. Webster was conducting home renovations, so she had RTK's agents and her home contractors place the pallet in her garage. (Webster Aff., ¶ 13.) Someone named Carlo Palacio signed a delivery receipt indicating that "all freight

2

[was] received in good order and shrinkwrap/banding (*sic*) intact." (ECF No. 39-9, PAGEID # 561.)  Ms. Webster says that she noticed damage to one of the boxes and looked inside to make sure the contents were not damaged at the time of delivery. (Resp. Interrog. No. 5, ECF No. 39-7, PAGEID # 543.) Ms. Webster also testified that she received only a single box on an unwrapped wooden pallet. (Webster Aff., ¶ 12.)

On the day of delivery, Ms. Webster signed a second USAR, which RTK presents as proof that all of her items were delivered. (ECF No. 39-4, PAGEID # 521.) But this USAR is mostly blank and indicates that Ms. Webster had shipped one "pallet of items" weighing nothing and having no value. (*Id.*) This document does not reference the condition of the delivered goods and does not indicate whether Ms. Webster received the whole shipment.

For the remainder of her home renovations (about two months), Ms. Webster stored the pallet in her garage; she did not open or otherwise disturb it. (Pl.'s Resp., ECF No. 41, PAGEID # 724.) Construction workers had access to the garage and Ms. Webster supervised the workers when they went in. (*See id.*) But in June 2022, seventy-one days after delivery, when Ms. Webster unpacked the pallet, *Chrysanthemums* was not there. (Webster Aff., ¶ 14.) She immediately notified RTK that her painting was lost. (*Id.* ¶ 16.)

Ms. Webster filed suit in the Franklin County, Ohio Court of Common Pleas, and RTK timely removed the action to this Court. Ms. Webster then twice amended

3

her Complaint. The only remaining claim is for violation of the Carmack Amendment, 49 U.S.C. § 14706 *et seq*.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; see also Matsushita *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

4

### III. ANALYSIS

The Carmack Amendment was enacted in 1906 to amend the Interstate Commerce Act, 24 Stat. 379, to create "a national scheme of carrier liability for loss or damage to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). The Amendment allows shippers (here, Ms. Webster) to hold carriers (here, RTK) strictly liable for loss of cargo, unless the shipper agrees to some other level of liability in writing. *Id.* The Amendment "relieves shippers of the burden of determining which carrier caused the loss" and allows carriers to "acquire reasonable certainty in predicting potential liability." *Id.* It is an exclusive remedy that "preempts all state law claims based upon the [shipping contract], in which the harm arises out of the loss of or damage to goods." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 284 (7th Cir. 1997).

The Amendment's protections begin at the time the carrier receives the cargo and "extinguish[] upon delivery" of the goods to the shipper. *Union Pac. R. Co. v. Beemac Trucking, LLC*, 929 F. Supp. 2d 904, 914 (D. Neb. 2013). Carriers may not contractually excuse themselves from liability for losing or failing to deliver goods.[1]

---

[1] In briefings, RTK references paragraph 8 of the USAR, which states that "Liability is one way only from the Ship From to the Ship To named in this agreement. There is no liability [for RTK] after [Ms. Webster] accepts by opening or signing for the shipment[.]" To the extent RTK attempts to use this language to retroactively disclaim its liability for loss or damage during shipment, the provision is not enforceable. However, the Court interprets this provision to comply with the Carmack Amendment by providing that RTK is not liable for loss or damage to the goods that occurs after delivery; only for loss or damage that occurs before delivery.

*REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 698 (7th Cir. 2008). They may only, under certain circumstances, limit their liability. *Id.*

RTK argues that Ms. Webster's Carmack Amendment claim fails because the USAR required her to notify it of any loss within fourteen days of delivery, which she did not do. RTK further argues that Ms. Webster cannot make out a prima facie claim under the Carmack Amendment. For her part, Ms. Webster argues that she had ninety days to notify RTK of any loss, and that she is entitled to summary judgment on her claim.

> **A.  RTK cannot use the USAR to limit the time Ms. Webster had to bring notice of a claim under the Carmack Amendment.**

The Carmack Amendment prevents shippers and carriers from contractually limiting the time a shipper has to bring notice of a claim for loss or damage to less than nine months. 49 U.S.C. § 14706(e)(1); *Arctic Exp., Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 794 (S.D. Ohio Mar. 30, 2007). It is undisputed that Ms. Webster notified RTK that her painting was missing seventy-one days after delivery. Ms. Webster complied with the Carmack Amendment's notice requirement. Any contractual provisions to the contrary are not enforceable.

> **B.  Ms. Webster's has not established her prima facie case.**

To establish a prima facie case under the Carmack Amendment, a plaintiff must show (i) that the carrier received the cargo in good condition; (ii) that the cargo was lost or damaged; and (iii) the amount of actual loss or damages. *CNA Ins. Co. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 353 (6th Cir. 2014). If the plaintiff proves these elements, the burden shifts to the carrier to show that "it was free

6

from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Marks Mfg. Co. v. New York Cent. R. Co.*, 448 F.2d 68, 71 (6th Cir. 1971).

Here, the Court need not address the first two elements of a Carmack Amendment prima facie case because Ms. Webster has not provided any admissible evidence in support of the third element.

The Carmack Amendment provides shippers a "statutory right to recover for actual losses or injuries to property caused by carriers." *Gordon*, 130 F.3d at 285–86. "Within the meaning of the Carmack Amendment, 'actual loss or injury to the property' is ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm." *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 277 (1st Cir. 2000). "[A] carrier's maximum liability for household goods that are lost . . . is an amount equal to the replacement value of such goods, subject to a maximum amount equal to the declared value of the shipment[.]" 49 U.S.C. § 14706(f)(2). "If the shipper declares a value for the shipment, that amount becomes the maximum amount for which the moving company would be liable in the event of a total loss of the customer's shipment." *Cook v. New York Moving & Storage, Inc.*, No. 2:19-cv-00098-DBB-JCB, 2020 WL 5803190, at *4 (D. Utah Sept. 29, 2020) (citation omitted).

Ms. Webster argues that the declared value of *Chrysanthemums* (i.e., the value she listed on the USAR) is the painting's actual value. She thus demands $25,000 in damages. But declaring a value on the USAR, by its terms, did not

establish the actual value of *Chrysanthemums*—it established the declared value. (*See* ECF No. 22, PAGEID # 385, ¶6 (listing the acceptable ways that customers can prove the actual value of their goods and noting that "[d]eclaring a value on this form is not an accepted proof of value").) The Carmack Amendment similarly puts daylight between the actual value and declared value of lost or damaged household goods. *Cf.* 49 U.S.C. § 14706(f)(2) (explaining that carriers are liable for the "replacement value" of lost or damaged goods, which may not exceed the "declared value"). In other words, *Chrysanthemums'* declared value does not, without more, establish its actual value.

Ms. Webster has provided no admissible evidence of the actual value of *Chrysanthemums*. Rather, she provides only hearsay in the form of internet searches and twenty-nine-year-old unauthenticated appraisals of other William Sommers paintings.

Because she has failed to establish the third element of her *prima facie* case, or even to show that there is a genuine issue of material fact as to that element, RTK is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, RTK's Motion for Summary Judgment is **GRANTED**. Ms. Webster's Motion is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**